**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**CASE NO. ____________**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KATHERINE OWUSU AGYEMANG,<br>Axxx-xxx-939,[1] a/k/a KATE KYEI ADUTWUM,<br>Axxx-xxx-030<br><br>Defendant. | **COMPLAINT TO REVOKE NATURALIZATION** |

Plaintiff, the United States of America, by its attorneys, alleges as follows:

## I. PRELIMINARY STATEMENT OF THE CASE

1. The United States of America brings this civil action against Defendant Katherine Owusu Agyemang,[2] to revoke her naturalized U.S. citizenship pursuant to 8 U.S.C. § 1451(a). With the attached affidavit showing good cause, the United States of America brings this civil

---

[1] Pursuant to Federal Rule of Civil Procedure 5.2(a), Plaintiff has redacted personal data identifiers from this filing and its exhibits, including Social Security and taxpayer-identification numbers except for the last four digits, dates of birth except for the year, and financial-account numbers except for the last four digits. Plaintiff has also redacted alien registration numbers, passport numbers, telephone numbers, places of birth, and other sensitive personally identifiable information. *See* Fed. R. Civ. P. 5.2(a), (d)–(g); Fed. R. Civ. P. 5.2 advisory committee's note to 2007 amendment (identifying alien registration numbers as information that may warrant additional protection). To the extent documents contain records protected by the Privacy Act, federal agencies generally may not disclose records contained in a system of records without the subject's written consent, subject to statutory exceptions. 5 U.S.C. § 552a(b); *Manivannan v. U.S. Dep't of Energy*, No. 24-2337, slip op. at 7 (3d Cir. June 24, 2025) (not precedential).

[2] During the course of the Defendant's immigration lifecycle, she was married, and she adopted the last name "Agyemang." This Complaint will use the names Katherine Owusu or Katherine Owusu Agyemang, as the Defendant used them and as they appeared on the immigration forms during her immigration lifecycle.

action on the grounds that Defendant illegally procured her naturalization and that she willfully misrepresented and concealed material facts during the naturalization process, both of which require her denaturalization.

2. Before she naturalized as a U.S. citizen in 2005 under the identity of Katherine Owusu Agyemang, Defendant was previously ordered removed from the United States under the identity of Kate Kyei Adutwum. In 1991, Defendant, using the name Kate Kyei Adutwum, filed an immigration benefit request with the former Immigration and Naturalization Service (INS).3 In December 1993, INS personally served Defendant a Form I-122, Notice to Applicant for Admission Detained/Deferred for Hearing before Immigration Judge, which charged her as an immigrant not in possession of a valid immigration visa. In December 1994, the Immigration Judge ordered Defendant, using the name Kate Kyei Adutwum, be excluded and deported from the U.S.

3. In 2000, Defendant's spouse at the time with last name Owusu, filed as Petitioner with INS a Form I-130, Petitioner for Alien Relative, which used Defendant's name Katherine Owusu Agyemang. In February 2001, the I-130 was approved. In May 2001, Defendant, using the name Agyemang, submitted Form OF-230, Application for Immigrant Visa and Alien Registration, with the American Consulate in Ghana. That same month, Defendant was issued an immigrant visa by the U.S. Consulate in Ghana. In July 2001, Defendant was admitted to the U.S.

---

[3] On March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice, and most of its functions were transferred to the newly formed Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135 (Nov. 25, 2002). The INS was divided into three separate agencies, Immigration and Customs Enforcement, Customs and Border Protection, and Citizenship and Immigration Services ("USCIS"). USCIS assumed the INS's authority to adjudicate visa petitions, adjustment and naturalization applications, and other requests for immigration benefits. *Id.* at § 451.

in New Jersey as a lawful permanent resident with conditional status, based on her marriage to her U.S. citizen husband at the time, Owusu. In June 2003, USCIS received Form I-751, Petition to Remove the Conditions on Residence, which it approved in June 2004.

4. In May 2004, USCIS received Defendant's Form N-400, Application for Naturalization. In June 2005, Defendant was interviewed by USCIS to determine her naturalization eligibility, and Defendant did not disclose her full prior immigration history under the Kate Kyei Adutwum identity. At no time during her adjustment and naturalization proceedings did Defendant reveal that she had attempted to use the Kate Kyei Adutwum identity to procure immigration benefits or that she was subject to a final exclusion and deportation order under the Kate Kyei Adutwum identity when she naturalized.

5. Defendant's actions and conduct statutorily barred her from becoming a U.S. citizen and render her naturalization unlawfully procured. Defendant was not qualified for U.S. citizenship because her admission to legal permanent resident status was procured by fraud or misrepresentation and she lacked the necessary good moral character. For each of these reasons, Defendant was not statutorily qualified for naturalization and, therefore, illegally procured her naturalization, and the Court must revoke her U.S. citizenship. Also, Defendant's willful misrepresentations and concealment of facts during her naturalization proceedings, which would have revealed the foregoing eligibility issues, provide an independent basis on which she must be denaturalized. Thus, with the attached affidavit showing good cause, Plaintiff brings this civil action to revoke and set aside the order admitting Defendant to citizenship and to cancel his certificate of naturalization under 8 U.S.C. § 1451(a).

## II. PARTIES, JURISDICTION, AND VENUE

6. This is an action under 8 U.S.C. § 1451(a) to revoke and set aside the order admitting Katherine Owusu Agyemang to U.S. citizenship, and to cancel Certificate of Naturalization No. 29331179.

7. Plaintiff is the United States of America.

8. Defendant is a naturalized U.S. citizen whose last known address of residence is in Lakewood, NJ, which is in this District.

9. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1345 for this cause of action under 8 U.S.C. § 1451(a).

10. Venue is proper in the District of New Jersey under 8 U.S.C. § 1451(a) and 28 U.S.C. § 1391 because Defendant's last known residence is in this District.

## III. FACTUAL ALLEGATIONS

11. The affidavit of Stephaniee Hartman, Immigration Services Officer, U.S. Citizenship and Immigration Services, an agency within the U.S. Department of Homeland Security, showing good cause for this action, as required by 8 U.S.C. § 1451(a), is attached as Exhibit 1.

### A. Defendant's Immigration History Under the Identity as Kate Kyei Adutwum

12. On or about September 18, 1991, Defendant, using the name Kate Kyei Adutwum, arrived at JFK International Airport and presented a Netherland's passport (#xxxx611) with Defendant's photograph but under the name Liane Denise Reingoud. On or about September 30, 1991, Defendant submitted an application to INS for immigration benefits.

13. On January 28, 1992, Defendant appeared for her initial hearing before the Immigration Court. Defendant's immigration case was continued until she was formally served by

INS with a Form I-122, Notice to Applicant for Admission Detained/Deferred for Hearing before Immigration Judge, on December 14, 1993. On February 9, 1994, Defendant and her attorney appeared at the exclusion hearing, conceded to various charges, and contested a charge.

14. On December 12, 1994, Defendant appeared for a hearing regarding an immigration benefit, and she testified under oath. On December 13, 1994, the Immigration Judge denied Defendant's application for an immigration benefit, and the judge ordered Defendant to be excluded and deported from the U.S.

15. On July 1, 1996, Defendant divorced her then-husband, last name Kyei, in a court in New York, NY.

16. On May 3, 1997, Defendant married a U.S. citizen, with last name Colson, in Connecticut.

17. On June 24, 1997, Defendant, filed Form I-485, Application to Register Permanent Residence or Adjust Status, with INS, based on her marriage to her spouse, Colson. Colson concurrently filed Form I-130, Petition for Alien Relative, on Defendant's behalf.

18. On the Form I-485 application, Defendant stated she was born on May 21, 1960, in Ghana, and she provided her A-Number as A29-846-030.

19. On or about July 31, 1997, Defendant, using the name Kate Adutwum Colson (a/k/a Adutwum), had her fingerprints collected. Defendant submitted this fingerprint card with her Form I-485.

20. On June 25, 1999, the INS denied Defendant's Form I-485 application for failure to attend her Form I-485 interviews, which were scheduled for July 9, 1998 and December 7, 1998.

**B. Defendant's Immigration History Under the Identity as Katherine Owusu Agyemang**

**Defendant's Immigrant Visa Application Under the Identity of Katherine Owusu Agyemang**

21. On February 24, 2000, Defendant's then-spouse, last name Owusu, filed a Form I-130, Petitioner for Alien Relative, on Defendant's behalf, using the name Katherine Owusu Agyemang. The application stated Defendant had been married once before to Kyei, provided "N/A" to Defendant's A-Number and other names used, and marked "No" to whether Defendant had ever been in the U.S. The Defendant was not free to marry Owusu, as she never admitted her marriage to Colson and did not submit a divorce decree from Colson.

22. On February 22, 2001, INS approved Owusu's Form I-130 petition filed on behalf of Defendant. The I-130 petition was not approved at the time of filing as Defendant was still married to Colson.

23. Some time after her marriage to Colson in Connecticut on May 3, 1997, the Defendant departed from the U.S.

24. On May 16, 2001, Defendant submitted Form OF-230, Application for Immigrant Visa and Alien Registration, to the U.S. Consulate in Accura, Ghana. On the Form, Defendant stated that she lived in Ghana from 1957 to present; wrote "N/A" in the box to list the dates of all previous visits or residences in the U.S.; and entered "No" to questions addressing immigration violations related to removal/deportation orders, unlawful presence in the U.S., and seeking to procure an immigration benefit based on fraud and misrepresentation.

25. On May 29, 2001, Defendant was issued an immigrant visa by the U.S. Consulate in Ghana.

26. On July 13, 2001, Defendant was admitted to the U.S. in New Jersey, as a lawful permanent resident with conditional status, based on her marriage to her U.S. citizen husband, Owusu. Exhibit 7 (Immigrant Visa and Alien Registration)

27. On June 6, 2003, USCIS received Defendant's Form I-751, Petition to Remove the Conditions on Residence, which was jointly filed with Defendant's then-spouse, Owusu. On the form, Defendant provided the following:

a. Her name was Katherine Agyemang;

b. Her date of birth was May xx, 1957;

c. Her country of birth was Ghana;

d. Her A-Number was Axxx-xxx-939; and

e. She is not in removal or deportation proceedings;

28. On or about May 23, 2003, Defendant signed the Form I-751, thereby certifying under penalty of perjury that its contents were true and correct.

29. On June 17, 2004, USCIS approved Defendant's Form I-751, without an interview.

**Defendant's Naturalization Application Under the Identity of Katherine Owusu Agyemang**

30. On or about June 1, 2004, USCIS received Defendant's Form N-400, Application for Naturalization, based on her having been a lawful permanent resident for a period of three years and her having been married to and living with the same U.S. citizen spouse. Exhibit 8 (Form N-400, Application for Naturalization) Defendant, using the name Katherine Owusu Agyemang, signed the Form N-400 on May 28, 2004.

31. Part 1, Question C of the naturalization application asks the applicant to provide any other names she had "ever used."

32. Defendant responded, “Katherine Adeutwumwaah.”

33. Part 10, Question 23 of the naturalization application asks the applicant if she had “EVER given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal?” (emphasis in original).

34. Defendant checked the box, “No” to answer Part 10, Question 23 of her naturalization application.

35. Part 10, Question 24 of the naturalization application asked the applicant if she had “EVER lied to any U.S. government official to gain entry or admission into the United States?” (emphasis in original).

36. Defendant checked the box, “No” to answer Part 10, Question 24 of her naturalization application.

37. Part 10, Question 27 of the naturalization application asked the applicant if she had “EVER been ordered to be removed, excluded, or deported from the United States?” (emphasis in original).

38. Defendant checked the box, “No” to answer Part 10, Question 27 of her naturalization application.

39. On or about May 28, 2004, Defendant signed her naturalization application under penalty of perjury certifying that the application and evidence submitted with it were all true and correct.

40. On June 20, 2005, Defendant appeared at a USCIS field office for an interview to determine Defendant’s eligibility for naturalization.

41. Defendant was placed under oath before starting the interview.

42. During her naturalization interview, the Defendant was asked whether she had ever given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal, and Defendant orally answered under oath that she had not, confirming her "No" response to Part 10, Question 23 of her naturalization application.

43. Defendant was asked whether she had ever lied to any U.S. government official to gain entry or admission into the United States, and Defendant orally answered under oath that she had never lied to any U.S. government official to gain entry or admission into the United States, confirming her "No" response to Part 10, Question 24 of his naturalization application.

44. Defendant was asked whether she had ever been ordered to be removed, excluded, or deported from the United States, and Defendant orally answered under oath that she had never been ordered to be removed, excluded, or deported from the United States, confirming her "No" response to Part 10, Question 27 of her naturalization application.

45. At the conclusion of the interview, and after some forty changes to the document, Defendant signed the naturalization application attesting under penalty of perjury that the contents of the application were true and correct.

46. At no point during the naturalization process did Defendant disclose that she gave false and misleading information to U.S. government officials while applying for an adjustment of status, under her Kate Kyei Adutwum identity, an immigrant visa and naturalization.

47. At no point during the naturalization process did Defendant disclose that she lied to U.S. government officials to gain entry or admission into the United States.

48. At no point during the naturalization process did Defendant disclose that on December 13, 1994, an immigration judge ordered her, under her Kate Kyei Adutwum identity, to be excluded and deported from the United States.

49. On August 3, 2005, Defendant submitted a copy of her permanent resident card and a copy of her marriage certificate from her first marriage.

50. On September 13, 2005, based on her written application and on the oral testimony that she provided at the naturalization interview, USCIS approved Defendant's naturalization application.

51. On September 27, 2005, Defendant took the Oath of Allegiance to the United States and was admitted as a citizen of the United States, using the name Katherine Owusu Agyemang.

52. On September 27, 2005, USCIS issued Certificate of Naturalization No. 29331179 to Defendant. Exhibit 9 (Naturalization Certificate)

**C. Defendant's Fingerprints**

53. Analysis and comparison of the fingerprint submissions taken on or about July 31, 1997 and on or about June 28, 2004 demonstrate by clear, convincing, and unequivocal evidence that the same individual submitted fingerprints under the identities of Kate Kyei Adutwum and Katherine Owusu Agyemang.

54. Kate Kyei Adutwum and Katherine Owusu Agyemang are the same person.

## IV. GOVERNING LAW

**A. Statutory Prerequisites to the Acquisition of Citizenship through Naturalization**

55. No alien has a right to naturalization "unless all statutory requirements are complied with." United States v. Ginsberg, 243 U.S. 472, 474-75 (1917).

56. The Supreme Court has underscored that "[t]here must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." Fedorenko v. United States, 449 U.S. 490, 506 (1981) ("An alien who seeks political rights as a member of this Nation can rightfully obtain them only upon the terms and conditions specified by Congress." (quoting Ginsberg, 243 U.S. at 474).

57. Congress also mandated that an applicant for naturalization must demonstrate that he or she has been lawfully admitted to the United States for permanent residence. 8 U.S.C. §§ 1427(a)(1), 1429.

58. Congress defined the term "lawfully admitted for permanent residence" to mean "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." 8 U.S.C. § 1101(a)(20).

59. A person is "lawfully admitted for permanent residence" only when the grant of lawful-permanent-resident status complies with the substantive legal requirements governing admission or adjustment, rather than merely the required procedures. *Koszelnik v. Sec'y, Dep't of Homeland Sec.*, 828 F.3d 175, 180 (3d Cir. 2016); *Gallimore v. Att'y Gen.,* 619 F3rd 216, 223-224 & n.6 (3rd Cir. 2010); *Saliba v. U.S. Att'y Gen.*, 828 F.3d 182, 192 (3rd Cir. 2016).

60. Accordingly, a formal grant of permanent-resident status is not a lawful admission when the recipient was not legally entitled to that status for any reason, regardless of whether the defect involved fraud. *Koszelnik*, 828 F.3d at 179-180; *Gallimore,* 619 F.3d at 224.

61. A person granted permanent-resident status while inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) was not lawfully admitted for permanent residence and therefore was ineligible for naturalization. *Saliba*, 828 F.3D at 190, 192-93.

62. An underlying immigration-benefit request fails to comply with 8 C.F.R. § 103.2(a)(2) when it contains a material falsehood or omission, notwithstanding the applicant's certification that the submitted information is true and correct. An omission is material when it prevents investigation of a relevant eligibility issue, even if disclosure would not necessarily have resulted in denial. *Savane v. Sec'y U.S. Dep't of Homeland Sec.*, 164 F.4th 93, 99-101 (3d Cir. 2026); *Koszelnik*, 828 F.3d at 180 & n.20.

63. An alien may obtain permanent resident status if the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and an immigrant visa is immediately available to the alien when she files a petition seeking permanent resident status. 8 U.S.C. § 1255(a).

64. An alien is inadmissible, and thus not qualified for adjustment to permanent resident status, if she sought to procure or procured a visa, other documentation, or admission into the United States or other immigration benefits by fraud or willfully misrepresenting material facts. See 8 U.S.C. § 1182(a)(6)(C)(i).

65. Unlike an applicant for adjustment of status under 8 U.S.C. § 1255(a), an alien who obtains an immigrant visa through consular processing must be found admissible by a consular officer abroad and then seek admission at a U.S. port of entry. *See* 8 U.S.C. § 1101(a)(13)(A) (defining "admission" as "the lawful entry of the alien into the United states after inspection and authorization by an immigration officer"). Lawful permanent resident status obtained through this process is likewise valid only if the alien was, in fact, admissible at the time of entry, not merely if the consular officer issued the visa. Because Defendant proceeded through consular processing rather than adjustment of status, the operative moment of legal defect is her application for an

immigrant visa and her subsequent application for admission at the port of entry, not an adjustment application filed from within the U.S.

66. Separately, an alien previously excluded, deported, or removed from the U.S. who again seeks admission is inadmissible under 8 U.S.C. § 1182(a)(9)(A), unless the alien first obtained the consent of the Attorney General (or, after the 2003 reorganization, the Secretary of DHS) to reapply for admission. This "consent to reapply" requirement applies regardless of whether the alien later obtained a visa through consular processing; a consular officer's issuance of an immigration visa does not cure the inadmissibility arising from a prior exclusion order, and admission obtained without the required consent renders any resulting lawful-permanent-resident status invalid for naturalization purposes under *Koszelnik*, 828 F.3d at 179-80, and *Gallimore*, 619 F.3d at 223-24.

67. Congress also mandated that an individual may not naturalize unless that person, "during all periods referred to in this subsection has been and still is a person of good moral character . . . ." See 8 U.S.C. § 1427(a). The required statutory period for good moral character begins five years before the date the applicant files the application for naturalization, and it continues until the applicant takes the oath of allegiance and becomes a U.S. citizen. *Id.*

68. Congress explicitly precluded individuals who give false testimony during the statutory period for the purpose of obtaining immigration benefits from being able to establish the good moral character necessary to naturalize. See 8 U.S.C. § 1101(f)(6).

69. An application for naturalization cannot establish the good moral character required for naturalization if she committed an unlawful act during the statutory period that reflects adversely on her moral character, absent extenuating circumstances. 8 U.S.C. § 1101(f). Violations

of federal criminal statutes, including 18 U.S.C. §§ 1001, 1621, and 1546, constitute such unlawful acts.

70. Section 1001 of Title 18 makes it a crime to knowingly and willfully falsify, conceal, or cover up a material fact, or to make a materially false statement, in a matter within the jurisdiction of the executive branch of the U.S. 18 U.S.C. § 1001(a)(1)-(3).

71. Section 1621 of Title 18 makes it a crime for a person who, having taken an oath before a competent tribunal, officer, or person that he will testify, declare, depose, or certify truly, willfully states or subscribes any material matter which he does not believe to be true. 18 U.S.C. § 1621(1). This includes both written certifications made under penalty of perjury and oral testimony given under oath.

72. Section 1546 of Title 18 makes it a crime to, among other things, knowingly forge, counterfeit, alter, or falsely make any immigrant or nonimmigrant visa, permit, or other document required for entry in the U.S., or to knowingly use, or attempt to use, any such document knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of false claim or statement. 18 U.S.C. § 1546(a). Section 1546 also criminalizes making a false statement under oath, or knowingly subscribing as true any false statement, in any application, affidavit, or other document required by the immigration laws or regulations. *Id.*

73. Because Defendant's conduct, as alleged herein, violated 18 U.S.C. §§ 1001, 1621, and 1546, Defendant committed unlawful acts during the statutory period which independently bar a finding of good moral character. 8 U.S.C. § 1101(f).

74. Defendant's failure to disclose her prior order of exclusion on her immigrant visa application independently rendered her inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i), because the omission concealed a material fact bearing directly on her admissibility and prevented the

consular officer from investigating whether she required consent to reapply for admission under 8 U.S.C. § 1182(a)(9)(A). *See Savane*, 164 F.4th at 99-101; *Koszelnik*, 828 F.3d at 180 n.20. This omission also constituted a false statement in an application required by the immigration laws in violation of 18 U.S.C. § 1546(a), and a material omission within the jurisdiction of the executive branch in violation of 18 U.S.C. § 1001(a)(1), each of which independently bars a finding of good moral character under 8 U.S.C. § 1101(f).

75. Regardless of whether Defendant's departure following her 1994 Exclusion Order predates or postdates the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Defendant's failure to disclose the Exclusion Order on her 2001 immigrant visa application independently rendered her inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i).

**B. The Denaturalization Statute**

76. Recognizing that there are situations where an individual has naturalized, despite failing to comply with all congressionally imposed prerequisites to the acquisition of citizenship or by concealing or misrepresenting facts that are material to the decision on whether to grant his or her naturalization application, Congress enacted 8 U.S.C. § 1451.

77. Under 8 U.S.C. § 1451(a), this Court must revoke an order of naturalization and cancel the individual's Certificate of Naturalization if his or her naturalization was either:

a. illegally procured, *or*

b. procured by concealment of a material fact or by willful misrepresentation.

78. Failure to comply with any of the congressionally imposed prerequisites to the acquisition of citizenship renders the citizenship "illegally procured." Fedorenko, 449 U.S. at 506 (quoting 8 U.S.C. § 1451(a)).

79. Naturalization was procured by concealment of a material fact or by willful misrepresentation, where: (1) the naturalized citizen misrepresented or concealed some fact during the naturalization process; (2) the misrepresentation or concealment was willful; (3) the fact was material; and (4) the naturalized citizen procured citizenship as a result of the misrepresentation or concealment. *Kungys v. United States*, 485 U.S. 759, 767 (1988).

80. Where the government establishes that the defendant's citizenship was procured illegally or by willful misrepresentation or concealment of material facts, "district courts lack equitable discretion to refrain from entering a judgment of denaturalization." *Fedorenko*, 449 U.S. at 517.

## V. CAUSES OF ACTION

### COUNT I

### ILLEGAL PROCUREMENT OF NATURALIZATION
### LACK OF GOOD MORAL CHARACTER
### (Unlawful Acts with No Extenuating Circumstances)

81. The United States re-alleges and incorporates by reference the factual and legal allegations contained in Sections II through IV of this Complaint.

82. To be eligible for naturalization, there is a statutory requirement that an applicant must show that he or she has been a person of good moral character for the three-year period before filing his or her naturalization application until the applicant becomes a naturalized U.S. citizen. 8 U.S.C. § 1430(a); 8 C.F.R. § 316.10(a)(1). This period is generally referred to as the "statutory period."

83. Under the law then in effect, an individual could not establish good moral character if, during the statutory period, she committed unlawful acts that adversely reflected on her moral character, unless she could establish extenuating circumstances. 8 U.S.C. §1101(f); 8 C.F.R. § 316.10(b)(3)(iii).

84. Defendant filed her application for naturalization on June 1, 2004, and she naturalized on September 27, 2005. Thus, to be eligible for naturalization, Defendant was required to establish that she was a person of good moral character during her "statutory period" from June 1, 2001 until September 27, 2005.

85. Defendant completed and filed her naturalization application during her "statutory period."

86. Defendant violated 18 U.S.C. § 1001(a)(1)-(3) by knowingly and willfully concealing in her naturalization application, a matter within the jurisdiction of the executive branch of the Government of the United States, that she had previously used a different identity and that she had been ordered excluded and deported under that identity.

87. Specifically, Defendant violated 18 U.S.C. § 1001(a)(1)-(3) when she completed her naturalization application by answering, "No" to Question 23 in Part 10, which asked: "Have you EVER given false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal?" (emphasis in original).

88. Specifically, Defendant violated 18 U.S.C. § 1001(a)(1)-(3) when she completed her naturalization application by answering, "No" to Question 24 in Part 10, which asked: "Have you EVER lied to any U.S. Government official to gain entry or admission into the United States? (emphasis in original).

89. Specifically, Defendant violated 18 U.S.C. § 1001(a)(1)-(3) when she completed her naturalization application by answering, "No" to Question 27 in Part 10, which asked: "Have you EVER been ordered to be removed, excluded, or deported from the United States?" (emphasis in original).

90. These answers were knowingly false in light of her prior immigration benefit request, being placed in exclusion proceedings, being ordered excluded and deported, and continued presence in the U.S. after being ordered removed.

91. No extenuating circumstances exist that would palliate Defendant's guilt for violating 18 U.S.C. § 1001(a)(1)-(3).

92. Defendant also committed perjury in violation of 18 U.S.C. § 1621 when she signed Form N-400 under penalty of perjury, certifying that her answers, including her false "No" answers to Questions 23, 24, and 27 in Part 10, were true, when she knew they were false.

93. Defendant separately committed perjury in violation of 18 U.S.C § 1621 when, after being placed under oath at her naturalization interview, she orally testified that she had never given false information to a government official, had never lied to gain admission, and had never been ordered removed, when in truth she knew each statement to be false.

94. Each of these written and oral false statements were material because it had the natural tendency to influence INS's decision whether to approve Defendant's naturalization application, satisfying the materiality element of perjury under 18 U.S.C § 1621.

95. These acts constitute additional "unlawful acts" within the statutory period under 8 U.S.C. § 1101(f) and 8 C.F.R. § 316.10(b)(3)(iii), for which no extenuating circumstances exist.

96. Defendant also violated 18 U.S.C. § 1546(a) when she used a false identity, Katherine Owusu Agyemang, to apply for and procure an immigrant visa and other immigration documents "prescribed by statute or regulation for entry into" the U.S., after having been denied an immigration benefit and ordered removed under a different identity, Kate Kyei Adutwum.

97. Defendant further violated 18 U.S.C. § 1546(a) by knowingly making false statements under oath with respect to material facts, namely her true identity, her prior exclusion

and deportation proceedings, and her marital history, in applications and affidavits required by the immigration laws, including her immigrant visa application and her naturalization application.

98. These violations of 18 U.S.C. § 1546(a) constitute additional "unlawful acts" during the statutory period under 8 U.S.C. § 1101(f) and 8 C.F.R. § 316.10(b)(3)(iii), independently barring a finding of good moral character.

99. These acts constitute violations of 18 U.S.C. § 1001(a)(1)-(3) and are "unlawful acts" within the statutory period. Therefore, Defendant could not establish good moral character and was ineligible to naturalize, thus her naturalization was illegally procured.

100. Because she was ineligible to naturalize, Defendant illegally procured her U.S. citizenship, and this Court must revoke her U.S. citizenship as provided in 8 U.S.C. § 1451(a).

## COUNT II

### ILLEGAL PROCUREMENT OF NATURALIZATION LACK OF GOOD MORAL CHARACTER (False Testimony)

101. The United States re-alleges and incorporates by reference the factual and legal allegations contained in Sections II through IV of this Complaint.

102. To be eligible for naturalization, there is a statutory requirement that an applicant must show that he or she has been a person of good moral character for the three-year period before filing his or her naturalization application until the applicant becomes a naturalized U.S. citizen. 8 U.S.C. § 1430(a); 8 C.F.R. § 316.10(a)(1). This period is generally referred to as the "statutory period."

103. Under the law then in effect, an individual could not establish good moral character if, during the statutory period, he provided false testimony for the purpose of obtaining an immigration benefit. INA § 101(f)(6), 8 U.S.C. § 1101(f)(6); 8 C.F.R. § 316.10(b)(2)(vi).

104. Defendant filed her application for naturalization on June 1, 2004, and she naturalized on September 27, 2005. Thus, to be eligible for naturalization, Defendant was required to establish that she was a person of good moral character during her "statutory period" from June 1, 2001 until September 27, 2005.

105. Defendant completed and filed her naturalization application during his "statutory period."

106. Defendant was statutorily barred from showing that she was a person of good moral character because she gave false testimony, orally and under oath, during the statutory period, for the purpose of obtaining an immigration benefit. 8 U.S.C. § 1101(f)(6).

107. Defendant testified falsely, under oath, on June 20, 2005, during the statutory period of her naturalization when, as described in Section III, she was asked whether she had ever given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal, and Defendant orally answered under oath that she had not. Her testimony was false because she provided false and misleading information to the officer who interviewed her on her naturalization application.

108. Defendant testified falsely, under oath, on June 20, 2005, during the statutory period of her naturalization when, as described in Section III, she was asked whether she had ever lied to any U.S. government official to gain admission into the United States, and she orally answered under oath that she had not. Her testimony was false because she lied to the officer who interviewed her on his naturalization application.

109. Defendant testified falsely, under oath, on June 20, 2005, during the statutory period of her naturalization when, as described in Section III, she was asked whether she had ever been ordered to be removed, excluded, or deported from the United States, and Defendant orally

answered under oath that she had never been ordered to be removed, excluded, or deported from the United States. Her testimony was false because, as described in Section III, she was ordered removed by an immigration judge on December 13, 1994.

110. Because Defendant could not establish the requisite good moral character during her statutory period, she was ineligible for naturalization. 8 U.S.C. § 1427(a)(3).

111. Because Defendant was ineligible to naturalize, Defendant illegally procured her naturalization, and this Court must revoke her U.S. citizenship under 8 U.S.C. § 1451(a).

## COUNT III

### PROCUREMENT OF U.S. CITIZENSHIP BY CONCEALMENT OF A MATERIAL FACT OR WILLFUL MISREPRESENTATION

112. The United States re-alleges and incorporates by reference the factual and legal allegations contained in Sections II through IV of this Complaint.

113. Under 8 U.S.C. § 1451(a), this Court must revoke Defendant's U.S. citizenship and cancel her Certificate of Naturalization because she procured her naturalization by concealment of material facts and by willful misrepresentations.

114. As set forth above, Defendant willfully misrepresented and concealed numerous material facts throughout the naturalization process, both on her sworn written naturalization application and in her oral testimony under oath at the naturalization interview.

115. Defendant indicated on her naturalization application and testified at her naturalization interview that she had never given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal.

116. At no point during her naturalization proceedings did Defendant disclose that she sought to procure and procured admission to the United States and other immigration benefits by fraud or willfully misrepresenting material facts.

117. Defendant indicated on her naturalization application and testified at her naturalization interview that she had never been ordered excluded and deported.

118. At no point during her naturalization proceedings did Defendant disclose that she had requested immigration benefits under the name Kate Kyei Adutwum and was ordered excluded and deported on December 13, 1994.

119. Each of Defendant's misrepresentations and concealments were willful, as Defendant had knowledge that the information she provided was false and/or incomplete.

120. Each of Defendant's misrepresentations and concealments were material to her naturalization application because it had a natural tendency to influence USCIS's decision whether to approve her naturalization application.

121. Defendant procured her naturalization because of her misrepresentations and concealments.

122. Defendant therefore procured her naturalization by concealment of material facts and willful misrepresentation, and this Court must revoke her U.S. citizenship under 8 U.S.C. § 1451(a).

## PRAYER FOR RELIEF

**WHEREFORE**, the United States of America respectfully requests:

(1) A declaration that Defendant illegally procured her U.S. citizenship;

(2) A declaration that Defendant procured her U.S. citizenship by concealment of material facts and by willful misrepresentation;

(3) Judgment revoking and setting aside the order admitting Defendant to U.S. citizenship and canceling Certificate of Naturalization No. 29331179, effective as of the original date of the order and certificate, September 27, 2005.

(4) Judgment forever restraining and enjoining Defendant from claiming any rights, privileges, benefits, or advantages related to U.S. citizenship that she obtained as a result of her September 27, 2005 naturalization;

(5) Judgment requiring Defendant to surrender and deliver, within ten days of the entry of judgment against her, her Certificate of Naturalization No. 29331179 and any copies thereof in her possession, and to make good faith efforts to recover and immediately surrender any copies thereof that she knows are in the possession of others, to the Attorney General, or her designated representative, including undersigned counsel;

(6) Judgment requiring Defendant to surrender and deliver, within ten days of the entry of judgment against her, any other indicia of U.S. citizenship (including, but not limited to, U.S. passports or passport cards, Enhanced Drivers Licenses, and other relevant documents, whether current or expired), and any copies thereof in her possession, and to make good faith efforts to recover and then surrender any copies thereof that he knows are in the possession of others, to the Attorney General, or his designated representative, including undersigned counsel; and

(7) Judgment granting the United States such other relief that may be lawful and proper in this case.

Dated: September 10, 2026 Respectfully submitted,

ROBERT FRAZER
United States Attorney
District of New Jersey

*/s/ James Tucker*
Special Assistant United States Attorney
Civil Division
U.S. Attorney's Office
District of New Jersey
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700
james.tucker@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**CASE NO. _____________**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KATHERINE OWUSU AGYEMANG,<br>Axxx-xxx-939, a/k/a KATE KYEI ADUTWUM,<br>Axxx-xxx-030<br><br>Defendant. | **EXHIBITS IN SUPPORT OF COMPLAINT TO REVOKE NATURALIZATION** |

**TABLE OF CONTENTS**

1. Affidavit of Good Cause, Adjudication Officer, USCIS, Department of Homeland Security (August 19, 2026)

2. Form I-122, Notice to Applicant for Admission Detained/Deferred for Hearing Before Immigration Judge (Kate Kyei Adutwum; December 14, 1993)

3. Written Decision of the Immigration Judge (Kate Kyei Adutwum; December 13, 1994)

4. INS Denial Letter – Form I-485, Application to Register Permanent Residence or Adjust Status, and Form I-130, Petition for Alien Relative (June 25, 1999; Kate Kyei Adutwum)

5. Form I-130, Petition for Alien Relative, (Katherine Adutwumwaah; February 22, 2001)

6. Form OF-230, Application for Immigrant Visa and Alien Registration (Katherine Owusu Agyemang; June 18, 2001)

7. Immigrant Visa and Alien Registration (Katherine Owusu, Agyemang; July 13, 2001)

8. N-400, Application for Naturalization (Katherine Owusu Agyemang; June 20, 2005)

9. Naturalization Certificate No. 31554812 (Katherine Owusu Agyemang; September 27, 2005)

10. U.S. Department of Homeland Security Laboratory Report (November 9, 2018)